

**SO ORDERED.**

**SIGNED this 29 day of November, 2012.**

_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

| | |
|---|---|
| **IN RE:** | **CASE NO.** |
| **JONATHAN YOUNG PETERSON** | **12-00793-8-SWH** |
| **DEBTOR** | |

### ORDER REGARDING OBJECTION TO CLAIM

The matter before the court is the debtor's objection to the claim filed by Heather Vania Sutton ("Ms. Sutton"). A hearing took place in Raleigh, North Carolina, on October 17, 2012.

### BACKGROUND

The debtor and Ms. Sutton were married on May 23, 1998. Two children were born of the marriage, Chaya Diane Peterson, born on July 29, 2000, and Isaac Rigby Peterson, born on October 29, 2003. On August 8, 2009, the debtor and Ms. Sutton executed an agreement titled "Divorce Agreement" (the "Divorce Agreement"). The Divorce Agreement contains the following provisions, among others:

– Jonathan will pay child support to Vania [Ms. Sutton] biweekly in the amount of $1,225.00 per paycheck, or 58.09% of take home pay, whichever is greater. Child support total per month will be no less than $2,450.00.

- Jon will pay child support to Vania Peterson until Isaac Peterson's 24th birth date. Beginning on Isaac's 19th birth date the child support will be reduced from 58.09% to 20% of Jonathan Peterson's total income.

- Jonathan will pay half of all bonus checks and extra income, after taxes, until October 29, 2023 to be used for the children as additional child support.

- Jonathan Peterson agrees to pay $5,000.00 for a mastopexy for Vania Peterson to be done before her 40th birthday, December 23, 2016.

- [S]hould litigation become necessary under any provision of this agreement, it is hereby agreed that the prevailing party shall be reimbursed by the non-prevailing party for all costs associated with the litigation to include reasonable attorneys' fees.

The Divorce Agreement is signed by both parties and was acknowledged by a notary public. Shortly after the Divorce Agreement was executed, the debtor and Ms. Sutton divorced.

On or around February 26, 2010, the debtor brought a civil action in the District Court Division of Wake County, North Carolina to set aside the Divorce Agreement and to determine child custody and support. On July 11 and 12, 2011, a hearing was held before Judge Worley, and on October 21, 2011, she entered an order interpreting and enforcing the Divorce Agreement.

In her order, Judge Worley found that the debtor's "extra income includes, but is not limited to, AdMob, Apple iTunes, and state and federal tax refunds," and that at the time of the divorce proceeding, the debtor owed Ms. Sutton $41,871.50 in child support arrearages (the "Arrearage Claim"). Out of the Arrearage Claim, Judge Worley specifically concluded that $2,214.72 in arrearages derives from the debtor's Apple iTunes earnings and $13,275.46 derives from his AdMob earnings. Judge Worley also found that Ms. Sutton had "insufficient funds to pay her own attorney fees" incurred as a result of the divorce proceeding. Based on this finding, as well as the Divorce

Agreement,[1] she awarded Ms. Sutton $35,000 in attorney's fees pursuant to N.C.G.S. 50-13.6, which is a statute that permits state court judges to award attorney's fees in matters regarding child custody and child support. Judge Worley then ordered the debtor to pay the Arrearage Claim in monthly installments of $100 per month and to pay the attorney's fees in quarterly payments of $3,000, with both payments to begin on September 1, 2011. On February 1, 2012, the debtor filed for relief under Chapter 13 of the United States Bankruptcy Code (the "Code"). Shortly thereafter, Ms. Sutton filed a proof of claim in the amount $81,371.50 and stated that the full amount was entitled to first priority status under 11 U.S.C. § 507(a)(1)(A) as a domestic support obligation. Ms. Sutton's $81,371.50 claim consists of (1) $41,371.50 based on the Arrearage Claim, (2) $35,000 in attorney's fees awarded by Judge Worley, and (3) $5,000 based on the costs of Ms. Sutton's mastopexy.

On March 27, 2012, the debtor objected to Ms. Sutton's claim, asserting that portions of her claim were not domestic support obligations as that term is defined in 11 U.S.C. § 101(14A) and should not be afforded priority status. The debtor argues that part of the Arrearage Claim, i.e. the debtor's earnings from AdMob and Apple iTunes, is the result of a property division pursuant to the Divorce Agreement and therefore is not a domestic support obligation. The debtor also argues that a portion of the attorney's fees, as well as the entire amount owed for Ms. Sutton's mastopexy, should not be considered a domestic support obligation. Finally, the debtor contends that the Arrearage Claim can be provided for in the plan in accordance with 11 U.S.C. § 1322(b)(5) as a long-term debt obligation, notwithstanding the fact that some or all of the Arrearage Claim is a

---

[1] The Divorce Agreement did provide for the award of attorney's fees, and this was acknowledged by Judge Worley in her order. However, as explained herein, Judge Worley also awarded the fees based on her finding that Ms. Sutton did not have the financial ability to pay the fees herself.

domestic support obligation entitled to first priority status. This last contention is based on the provision of the state court order permitting the debtor to pay the arrearage claim in monthly installments of $100.

## DISCUSSION

The debtor's objection to Ms. Sutton's claim presents two issues for the court to decide. The court must first determine what amount, if any, of Ms. Sutton's $81,371.50 claim constitutes a domestic support obligation. The court must then decide whether the debtor's plan can provide payment for the Arrearage Claim in accordance with 11 U.S.C. § 1322(b)(5) by virtue of the state court order.

The Code defines a "domestic support obligation" as a debt that is:

> (A) owed to or recoverable by —
>     (i) a spouse, [or] former spouse . . .
> (B) in the nature of alimony, maintenance, or support . . . of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of —
>     (i) a separation agreement, divorce decree, or property settlement agreement    . . . and
> (D) not assigned to a nongovernmental entity . . . .

11 U.S.C. § 101(14A).

As in most cases, whether Ms. Sutton's claim is a domestic support obligation turns on whether the claim is in the "nature of alimony, maintenance or support." See In re Sewell, 2008 Bankr. LEXIS 4025, at *3 (Bankr. E.D.N.C. Jan. 3, 2008) ("The issue usually comes down to . . . whether the claim is one for alimony, maintenance or support or is one arising from a property settlement. . . ."). The burden of showing that a claim is in the nature of support is on the claimant.

Tilley v. Jessee, 789 F.2d 1074, 1077 (4th Cir. 1986). If the claim arose from an agreement between the parties, courts must determine whether the parties intended for the obligation to be in the nature of support at the time the parties executed the agreement. See Tilley, 789 F.2d at 1078; In re Melichar, 661 F.2d 300, 303 (4th Cir. 1981); In re Alston, 2008 Bankr. LEXIS 2660, at *5 (Bankr. E.D.N.C. August 22, 2008); Sewell, 2008 Bankr. LEXIS 4025, at *3-4. If the claim arose from a court order, the issue is whether the court issuing the order intended for the obligation to be in the nature of support. See In re Bowen, 2010 Bankr. LEXIS 1520, at *14 (Bankr. E.D.N.C. May 10, 2010) (considering the findings made by the state court judge to determine whether that judge intended for the obligation arising from the court order to be in the nature of support); In re Bennett, 2009 Bankr. LEXIS 4398, at *4-7 (Bankr. E.D.N.C. February 9, 2009) (determining whether the state court intended for a debt to be in the nature of support when the debt arose from a court order).

To determine the parties' intention, or the court's intention in cases where the claim arose from a court order, the bankruptcy court should consider the terms of the agreement or court order, but "labels given to the obligations are not controlling." Alston, 2008 Bankr. LEXIS 2660, at *5; see also Tilley, 789 F.2d at 1077-78; Sewell, 2008 Bankr. LEXIS 4025, at *4. Other relevant factors to look at include:

> the nature of the obligation, whether there are dependent children, the relative earning power of the spouses and an indication that the obligation was an attempt to balance it, the adequacy of the dependent spouse's support without the assumption of the obligation, dependent spouse's receipt of inadequate assets in settlement, status of the obligation upon death or remarriage, timing of payments (lump sum or periodic), the payee (direct vs. indirect), waivers of maintenance, whether the obligation is modifiable, location of the paragraph containing the obligation within the agreement (whether or not it is located within the property distribution section), and the tax treatment of the obligation.

Alston, 2008 Bankr. LEXIS 2660, at *4-5; Sewell, 2008 Bankr. LEXIS 4025, at *4; Zeitchik v. Zeitchik (In re Zeitchik), 369 B.R. 900, 904 (Bankr. E.D.N.C. 2007); Sawtelle v. Keech (In re Keech), Adv. Pro. No. L-03-00109-8-AP, slip op. at 6-7 (Bankr. E.D.N.C. January 7, 2004).

The Divorce Agreement provides that the debtor will "*pay child support* to [Ms. Sutton] biweekly in the amount of $1,225.00 per paycheck, or 58.09% of take home pay, whichever is greater. *Child support* total per month will be no less than $2,450.00" (emphasis added). The Divorce Agreement also provides, however, that the debtor "will pay half of all bonus checks and extra income, after taxes, until October 29, 2023 *to be used for the children as additional child support*" (emphasis added).

In the state court order, Judge Worley made specific findings that the debtor's "extra income includes, but is not limited to, AdMob, Apple iTunes and state and federal tax refunds." Thus, Judge Worley found that the AdMob and iTunes earnings constitute a part of the debtor's "bonus checks and extra income," which the Divorce Agreement explicitly says is to be used for additional child support. It is apparent from the terms of the Divorce Agreement, therefore, that the parties meant for the AdMob and Apple iTunes earnings to be included within the "extra income" that was intended to be used for additional child support. Although labels given to the obligations are not dispositive, the terms of the Divorce Agreement, when considered along with the state court order, strongly suggest that the parties intended for these earnings to be in the nature of support.

The only evidence introduced by the debtor to counter this suggested intention is an email dated July 11, 2009, prior to the execution of the Divorce Agreement. In the email, the debtor wrote that he would pay Ms. Sutton "$2400 a month for the kids" in exchange for Ms. Sutton taking her name off of a deed to their house. The debtor then wrote, "All alimony, excluding any additional

6

income from Jeromith, will go towards debt only (house and credit cards)." To the extent that this email even suggests that the debtor intended to exclude the AdMob and iTunes earnings from child support, it only reflects his intention and has no bearing on what Ms. Sutton intended. The issue of whether an obligation is in the nature of support focuses on the parties' mutual intent, and evidence of a party's unilateral intent is insufficient to rebut the intent of the parties as reflected in a separation agreement. Tilley, 789 F.2d at 1078. Further, this email pre-dates the Divorce Agreement, and it is the Divorce Agreement, not the email, which most likely represents the final manifestation of the parties' intent.[2]

Probably most persuasive, however, related to the issue of support is Judge Worley's conclusion that the AdMob and Apple iTunes earnings owed to Ms. Sutton are in fact a portion of the Arrearage Claim. In the order, Judge Worley explicitly concludes that, out of the Arrearage Claim, $2,214.72 in arrearages derives from the debtor's Apple iTunes earnings and $13,275.46 derives from his AdMob earnings. Judge Worley's conclusions that these earnings are in fact child support further demonstrate that they are in the nature of support for purposes of a domestic support obligation under 11 U.S.C. §101(14A). See 11 U.S.C. §101(14A) (providing that a domestic support

---

[2] The court hesitates to even consider this email, which is parol evidence, to aid in the interpretation of the Divorce Agreement because the debtor introduced this email to contradict terms explicitly dealt with in the Divorce Agreement, i.e. the amount intended by the parties to constitute child support, and because the terms of the Divorce Agreement are unambiguous. See Allman v. Wappler (In re Cansorb Indus. Corp.), 2009 Bankr. LEXIS 3840, at *18 (Bankr. M.D.N.C. Nov. 20, 2009) ("The parol evidence rule prohibits the admission of parol evidence to vary, add to, or contradict the terms of an integrated written agreement, though an ambiguous term may be explained or construed with the aid of parol evidence.") (quoting Drake v. Hance, 195 N.C. App. 588, 591 (2009)); see also Alan Votta Constr., Inc. v. Kirkbride (In re Kirkbride), 2011 Bankr. LEXIS 1248, at *5 (Bankr. E.D.N.C. Apr. 7, 2011) ("Where the terms of a written contract are unambiguous, the court cannot consider parol evidence or other extrinsic evidence.") (citing First-Citizens Bank & Trust Co. v. 4325 Park Road Assocs., Ltd., 133 N.C. App. 153, 156 (1999)).

obligation includes a debt that is in the nature of support of a child of the debtor). Therefore, this court concludes that the AdMob and Apple iTunes earnings, which make up a portion of the arrearage claim, are in the nature of support.

The obligation for Ms Sutton's mastopexy, however, is not in the nature of support. The Divorce Agreement provides that the debtor will "pay $5,000 for a mastopexy for Vania Peterson [Ms. Sutton] to be done before her 40th birthday, December 23, 2016." The obligation was not labeled by the parties as support or alimony, whereas other provisions within the Divorce Agreement are explicitly designated as such, e.g. "extra income . . . to be used for the children as additional child support." No evidence was presented to explain why this expense should possibly be considered as a support obligation, and applying the determinative criteria provides no basis for such a conclusion.

Many courts look to whether the obligation is necessary to meet the basic needs of the claimant. See, e.g., Bowen, 2010 Bankr. LEXIS 1520, at *14-15 (concluding that a portion of debtor's retirement benefits were in nature of support based on state court findings that the benefits were intended for claimant's basic living expenses); Bennett, 2009 Bankr. LEXIS 4398, at *6 (Bankr. E.D.N.C. February 9, 2009) (concluding that mortgage payment was in nature of support and stating that it was necessary to provide housing for claimant and child); In re King, 461 B.R. 789, 797 (Bankr. D.A. 2010) (stating that mortgage payment provided a "necessity of life," i.e. shelter for the claimant and her son, and was in nature of maintenance or support). Additionally, the claimant will still receive other support and the payment is to be made in one lump sum, rather than in periodic payments. With nothing else shown, an obligation for an ex-spouse's mastopexy is not the type of support that is generally necessary to meet the basic needs of that ex-spouse.

The court must now decide whether the attorney's fees awarded by Judge Worley in the state court proceeding are in the nature of support. Many courts have concluded that the award of attorney's fees in a proceeding related to a divorce decree or separation agreement is in the nature of support. In re Silansky, 897 F.2d 743, 744 (4th Cir. 1990); In re Joseph, 16 F.3d 86, 88 (5th Cir. 1994); In re Genovese, 1996 U.S. App. LEXIS 24046, at *5 (4th Cir. September 12, 1996) (unpublished table decision); In re Forkish, 2010 Bankr. LEXIS 361, at *7-8 (Bankr. E.D.N.C. February 2, 2010); In re Pennington, 2011 Bankr. LEXIS 4977, at *5-6 (Bankr. W.D.N.C. Dec. 14, 2011).[3] Out of these decisions, some courts have stated that the fees were in the nature of support because they were related to a proceeding in which a support order or agreement was being enforced. See, e.g., Forkish, 2010 Bankr. LEXIS 361, at *7. Other courts, as well as some circuit courts, have stated that the fees were in the nature of support because the state court judge actually intended for the fees themselves to be support, not because the fees merely related to the enforcement of a support order or agreement. See Joseph, 16 F.3d at 88; Pennington, 2011 Bankr. LEXIS 4977, at *5; In re Andrews, 434 B.R. 541, 549 (Bankr. W.D. Ark. 2010). For example, in Joseph, the Fifth Circuit held that the fees were in the nature of support because "the award itself reflects a balancing of the parties' financial needs," not because the fees "tangentially relate[] to an award of support and maintenance." 16 F.3d at 88; see also In re Foiles, 1995 U.S. App. LEXIS 20753, at *6 (4th Cir. August 7, 1995) (unpublished table decision) (adopting reasoning in Joseph).

---

[3] A majority of these cases were decided pre-BAPCPA and before the definition of a domestic support obligation was added to the Code. However, these cases did consider and decide whether attorney's fees were in the "nature of support" for purposes of dischargeability under § 523(a)(5), and their analysis is applicable to the issue of whether attorney's fees fall under the definition of a domestic support obligation. See In re Andrews, 434 B.R. 541, 545-46 (Bankr. W.D. Ark. 2010); In re Poole, 383 B.R. 308, 313 (Bankr. D.S.C. 2007).

In Pennington, the court stated that attorney's fees are "generally considered to be in the nature of support when the award is driven by a spouse's inability to pay." 2011 Bankr. LEXIS 4977, at *5; see also Foiles, 1995 U.S. App. LEXIS 20753, at *6-7.

In the instant case, the debtor argues that the attorney's fees awarded by Judge Worley should not be considered a domestic support obligation because approximately two-thirds of the legal representation in the state court matter did not relate to the enforcement of support payments. However, as the state court order makes clear, one reason Ms. Sutton was awarded attorney's fees was because the state court found that she had "insufficient funds to pay her own attorney's fees." In awarding the fees to Ms. Sutton, Judge Worley cited N.C.G.S. § 50-13.6, which allows a judge to award fees to a party in a child custody or support proceeding who has "insufficient means to defray the expense of the suit." One reason for the attorney's fees, therefore, was because of Ms. Sutton's inability to pay the fees herself. Even if all of the attorney's fees did not directly relate to the enforcement of child support, the entire fee award is nevertheless in the nature of support because Judge Worley intended for the fees themselves to be for support.

After considering the Divorce Agreement, the state court order, and other relevant circumstances of the parties, the court finds that the amount owed for Ms. Sutton's mastopexy is not a domestic support obligation, but rather a general unsecured claim. However, the entire amount of the Arrearage Claim and the attorney's fees are domestic support obligations as defined in 11 U.S.C. § 101(14A). These obligations arose pursuant to the state court order that was entered on October 21, 2011. Although the state court order permitted the debtor to pay these obligations over time, they each became a legally enforceable debt owed by the debtor to Ms. Sutton on the date that the state court order was entered. They are, therefore, pre-petition claims and are allowable

under 11 U.S.C. § 502(b)(5). See 11 U.S.C. § 502(b)(5) (providing that a domestic support obligation is an allowed claim unless the obligation has yet to mature by the date that the petition is filed).

Not only are these domestic support obligations allowed claims, but they are each entitled to first priority status. See 11 U.S.C. § 507(a)(1)(A) (providing that a domestic support obligation that is an allowed claim is entitled to first priority status). As priority claims, 11 U.S.C. § 1322(a)(2) mandates that they be paid in full through the plan before the plan can be confirmed. See 11 U.S.C. § 1322(a)(2) ("The plan *shall* . . . provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim) (emphasis added); see also 11 U.S.C. § 1325(a)(1) (requiring a plan to comply with all provisions of the Code, including 11 U.S.C. § 1322(a)(2), before a plan can be confirmed). Therefore, the debtor's contention that the Arrearage Claim can be provided for in the plan as a long-term debt obligation in accordance with 11 U.S.C. § 1322(b)(5) contradicts the Code's explicit requirement that all priority claims be paid in full through the plan. Compare 11 U.S.C. §§ 1322(a)(1)-(4) (providing a list of requirements with which a chapter 13 plan *must* comply) with 11 U.S.C. §§ 1322(b)(1)-(11) (setting out what a chapter 13 plan *may* do, but is not required to do). If the debtor wants to take advantage of the benefits afforded by chapter 13 of the Code, the debtor's plan must comply with its explicit mandates, including 11 U.S.C. § 1322(a)(2), notwithstanding the state court order allowing the debtor to pay the obligations over time.

If this produces a harsh result, it is only because of the distinct circumstances in this case where the debtor has an unusually large amount of domestic support obligations that had accrued

11

by the petition date. Oftentimes, domestic support obligations will consist of post-petition obligations that are not allowable claims and thus will not be subject to the requirements of 11 U.S.C. § 1322(a)(2). See e.g., 11 U.S.C. § 502(b)(5); White v. Bell (In re White), 212 B.R. 979, 980 (10th Cir. BAP 1997) (affirming bankruptcy court's decision treating a domestic support obligation that accrued pre-petition as an allowed claim but disallowing a domestic support obligation that accrued post-petition); 4 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 502.03[6][a] (16th ed. rev. 2012) ("The reach of section 502(b)(5) is to disallow any claim for a debt which is unmatured at the time of the filing of the petition, e.g. future alimony payments, but which is excepted from discharge under section 523(a)(5)."). Even under circumstances where there is a significant amount owed as a priority claim, as in the instant case, a debtor's plan may provide for less than full payment of that claim, but only if the holder of such claim agrees to the proposed treatment. See 11 U.S.C. § 1322(a)(2) ("The plan . . . shall provide for the full payment . . . of all claims entitled to priority . . . *unless the holder of a particular claim agrees to different treatment*") (emphasis added). The debtor may certainly attempt to avail himself of this possibility so as to try and alleviate the consequences of 11 U.S.C. § 1322(a)(2). Indeed, it may benefit both parties–the debtor and Ms. Sutton–to reach such an agreement. However, unless Ms. Sutton agrees otherwise, the Code explicitly requires the debtor's chapter 13 plan to provide for the full payment of her allowed priority claim.

Based on the foregoing reasons, the debtor's objection to Ms. Sutton's claim is **ALLOWED** in part and **DENIED** in part.

    **SO ORDERED**.

**END OF DOCUMENT**